We're now recording. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now in session. The Honorable Christopher M. Kennedy presiding. Your Honors, the first and only case on the docket this morning is 2-24-0449. The people of the state of Illinois plaintiff, Apolli, v. Jesus Garcia, defendant, appellant, arguing on behalf of the appellant, Mr. Liam Dixon. Arguing on behalf of the Apolli, Ms. Lynn M. Harrington. All right. Good morning, everyone. Counsel for the appellant, you may proceed when ready. Good morning, Your Honors, and thank you. I may have pleased the court. We have filed an appeal with two issues. I'm going to focus primarily on the search issue in this case. We have a defendant who was pulled over for minor traffic infraction, that being failing to signal. The officers called the canine unit prior to pulling this vehicle over or curbing the vehicle. When the officers approached the vehicle, they did not smell any odors of any cannabis of any kind. They did not see any nefarious activity, including any furtive movements. However, they had the defendant exit the vehicle, and they did a free air sniff with this canine. When going into the car, they found what appeared to be a bag that had possibly contained cannabis in a small canister, possibly having previously contained cannabis, and the defendant having stated that somebody had smoked in the car previously. There were no other drugs in that car. When asked on cross-examination whether the dog could smell through one of those smell-proof containers, they said if there was odor coming from that, however, based on the officer's testimony, the human officer's testimony, there were no odors that they could smell. It was based on that that they searched this car, and we don't believe that that is sufficient probable cause at this time with the way the legislation and the case law is. We obviously have the case of People v. Redmond, which found that the odor of burnt cannabis was not sufficient probable cause to search a vehicle. That obviously could have been the case here because we obviously don't have any testimony from Officer Rex that that's what he was detecting. We also don't have any other controlled substances in the car which he could have detected. We also have something in the car that could have been in a sealed container, but that the officers, the human officers, could not smell. Obviously, allowing a canine to be a part of that legislation would obliterate the legislation they had. It would have to be a human officer, and I think the case that was recently cited by the state that they added, the concurrence indicated that it had to be a human person smelling it rather than a canine officer. Based on that, they did find a weapon in the car that they could not see when they were looking outside, looking in the car. They found that weapon underneath the seat, which was denied ownership by the defendant, and they took it into custody. We don't believe any of this was sufficient to allow them to go into the car. I know your honors have read the case law, and I know United States v. Kylo has been cited, and we would allude to that only in that we have here a canine officer detecting what we believe was innocent activity. Containers which had previously contained cannabis possibly is not a criminal. A possible burnt cannabis is not a criminal, is not probable cause in this case. And this dog did that. We don't think that canines trained to detect marijuana, based on the testimony that we have here, and I know the state did indicate that there was no expert. We did have the dog handler testifying. This canine could smell that in an odor-proof container if the odor was coming out from that container. Obviously, it's not something that a human could smell. I think it's akin to, I think, Justice McClaren, a long time ago, you opined that an officer's hands were not more sensitive than a raccoon's for a playing field doctor, and I think that's akin to that. We can't rely on a dog sniff to do that. Subsequent to that, the defendant was arrested. He was actually detained. He was then released, and he was then later arrested. After this case was set for trial, about a week prior to the case being set for trial, the state received DNA results, which they had asked for after the arrest, and there were three separate samples on this gun. The majority sample came back to a female. They did not test any other females, even the person who did testify in this trial that it was her gun and had the gun. A minority sample was that of the defendant, and another minority sample was of another individual who they believed was a male. The expert that was called to testify in this case testified that had the defendant touched this female, he could have had his DNA on her and transferred that DNA to this weapon. Based on the percentages of the DNA, the fact that this gun was not visible at all and the testimony, I know the court indicated that they did not believe the credibility of the girlfriend who did testify to that, but there was still no evidence of his knowledge of this weapon in the car. Again, no furtive movements, no admissions, nothing, except that these officers believed that he was a gang member prior to pulling him over. We don't believe that the possession case is sufficient to find him guilty beyond a reasonable doubt in that case. Based on that, Your Honor, we would be asking Your Honor to look at this and we would answer any questions Your Honors have. Counsel, I have a question. The dog, the evidence in the case is that the dog was trained to detect marijuana, heroin, methamphetamine, and cocaine. Is there any evidence indicating any distinction between the dog's ability to detect burnt cannabis versus raw cannabis? Only that the officer testified that the dog would detect both burnt and fresh cannabis. Now, does that indicate that we ought to defer here in terms of the dog alerts? It could be cocaine. It could be burnt. It could be raw cannabis. Even if the dog were mistaken, what would we have to decide? I think what you have to decide is whether a dog trained to sniff marijuana is sufficient probable cause with the change in both legislation and case law. I think if the dog was trained to detect alcohol, I know Justice Steigman said, well, marijuana is more unlegal than legal at this time. You can have illegal alcohol in a car if it's open. You can have illegal alcohol in a car if you're under 21. But if you're not, then that detection would not be probable cause. I think it's the same here. When an individual does not have any marijuana in his car, and obviously no other controlled substances in his car, we can, I think, deduce that this dog was smelling something that was legal. And I don't believe, and I know the United States Supreme Court in first declaring that the canine searches were legitimate was only if they don't expose non-contraband items. And that's, I think, what's exactly happening here. I think we would have to retrain these dogs or send these dogs to the airport where marijuana is always illegal and retrain them. And six months later, come back and have dogs that are trained not on marijuana because they can detect innocent conduct. If you had them trained for aspirin and cocaine, well, it's one or the other. That's fine. I don't think it should be a guessing game. I think we still have an expectation of privacy in our vehicles and our homes. And there's no difference in the type of alert that the dog gives depending on substance. Is that correct?  Correct. They do the same alert no matter what. And they describe the alert, and then they give them their toy as a reward for that alert. I thought one of the aspects of Justice Kennedy's question is, what if the dog is simply mistaken? And the officers then act in good faith based on what the dog alerted. Would they be more appropriate for them to just say, well, be on your way because maybe the dog made a mistake? But isn't that the whole purpose of the dog? Let's assume the dog made a mistake. Wouldn't they still open the door, search the car for presumably what they believe the alert means? Right. And I think we get back to United States versus place, whether those would be valid. And then we'd have to get into. And that was not an issue in this case as to the training of this animal, the detection or the training of the trainer, any of that, what they went through. They obviously have their tests that they go through. And that was not an issue in this case. We think that the dog, obviously, based on the fact that there were containers that had previously contained that, and the officer testified they could, that this was. If they made a mistake, I don't know that that's an expectation of privacy. We want to give up in mistaken animals or mistaken trainers. And again, we know these. But we do know. I'm sorry, but we do know that the dog will alert for cocaine, heroin, methamphetamine. The dog alerts. Is that not probable cause to search for cocaine, heroin, methamphetamine? It is. I mean, once we search and say, all right, it wasn't there. Does that negate the entire search back to the alert? I would argue in this case, I think it does, because there was nothing.  There was nothing there in this case. Now, if they detected cocaine and you find methamphetamine, yes, there's a detection there. But there was nothing. So, again, we can only assume that either this dog was mistaken or the trainer is mistaken. The handler is mistaken. I'm sorry. Or it detected innocent activity. Or there was heroin in the rug. There was cocaine in the rug. There was methamphetamine spilled in the back of the car that you, I and the most trained officer wouldn't see. But that dog smelled it. I mean, I guess some of my question is where do we draw the line and say the dog was wrong? And again, I think that the line that needs to be drawn is don't train them on innocent activity. It's not it. I mean, that's my point is possession of heroin, no matter how you look at it, methamphetamine, et cetera, everything but the cannabis container is not innocent behavior. The dog alerts to something that it's trained to see. I'm sorry, trained to smell my mistake. We should respond to that, even though we ultimately don't find the heroin in the car because it's just a trace amount left. I understand. But if they are trained for heroin and they hit on heroin and you're saying they're just mistaken or that it's in the carpet or something like that. I don't think anybody's got an issue. The issue is I don't think that Rex understands that there's a change in case law and change in legislation in that what he is trained to smell is now innocent. It can be innocent, especially if it is smell proof container. If he can smell through a smell proof container, then what is the purpose of that? So your position is the standard for smell proof containers is a human nose, not a canine nose. Correct. And I think that the concurrence in the recent case indicates that as well. Hoskins, Haskins. Anything else? Justice McLaren, any questions? I thought I heard you say that there was no issue because they didn't find anything. And I was under the impression that they found at least something. If it wasn't remnants or bits and pieces, I thought I heard and read that there was a container that was allegedly sealed, but the dog alerted anyway. Correct. Which could mean one of two things. Either dogs can smell through sealed containers or the container wasn't sufficiently sealed. Or as Justice Jorgensen indicated, there could be more marijuana or whatever drug someplace where it could not be found through visual inspection. And it wasn't of a sufficient quantity or wasn't sufficiently odiferous to cause humans to alert themselves to it. So you're in a position where you're trying to argue, I think, that if the glass is half empty, it's got to be determined to be empty. And that's difficult for me to swallow, even though there's something there to swallow, half a glass. So would you comment on the idea that we still don't have probable cause? I think you cited the Hoskins, did you not? Yes, that was the case the state presented recently. Yes, People v. Hoskins, and I was discussing the concurrence. Okay. I have no further questions. Justice Jorgensen? I do not at this time. Thank you. All right. Thank you, Mr. Dixon. You will have time in rebuttal. Thank you. Ms. Harrington, please proceed when ready. Good morning, Your Honors. Counsel, may it please the Court? My name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honors, before starting my argument, I'd like to comment on a few things that Defendant's Counsel touched upon in his argument. First of all, Justice McLaren, you are absolutely correct. Shake was found in both the Ziploc baggie, which was not a labeled baggie from a dispensary, and it actually was unsealed. It had simply been closed again. And shake was also found in the, I believe, black canister. Shake is the flower of the cannabis plant, so therefore, it is cannabis. Just wanted to clear up that misconception by Defendant. The trial court properly denied the motion to suppress here, Your Honors, because the police had probable cause to search his vehicle after Rex, the canine, alerted to the contraband after a free air snap. Now, we all know the standard of review that this court defers to the trial court's factual findings. And as the people put in their brief, the trial court did an excellent job of setting out very specific factual findings as to why this motion was denied. But overall, this court has de novo review of the ultimate legal ruling on the motion to dismiss. And it's also important to remember in this appeal, Your Honor, that the defendant has the burden here. He has the burden to show that there was an illegal search, and he absolutely did it, Your Honor. With regard to the dog sniff, the 4th District held last year in People v. Maury, that officers do not need an independent reason or an articulateless suspicion to perform a dog sniff after an ordinary traffic stop. I don't believe defendant complains that there was a problem with the traffic stop. We know that defendant was cited for failure to use a turn signal when he was traveling eastbound on Kimball and then turning left. Officer Taylor testified to that. Officer Taylor's testimony was corroborated by his body cam. So there we've got an ordinary traffic stop. So Officer Taylor, who is pulling defendant's license plate and sees that it belongs to him, knows this individual because of failure or eluding the police in a burglary, that he's got a slew of priors, including possession of cannabis with intent to deliver, calls for a dog sniff. The dog sniff comes immediately. They sniff, rex, alerts, right on the driver's side door, exactly where this shake is found. There is absolutely nothing wrong with this whatsoever, Your Honors. And it's important to remember, too, that the definition of the Illinois Supreme Court set out of People v. Hill in 2020. And it's been long held this, but Hill said that probable cause is based on the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the vehicle contains contraband or evidence of criminal activity. I believe one of the justices was asking about that. What if rex was wrong? That's not the standard. The standard here is based on the fact that as many cases have held, rex was properly trained and certified. Defendant does not contradict or complain about rex's training here. He was trained in cocaine, cannabis, heroin and methamphetamine. And a very, very important point, Your Honors, that you touched on is that using the word innocent. Innocent may be meaning legal, but even cannabis, just because the law has changed in Illinois, is not always considered innocent or legal. In fact, in 2024, in People v. Molina, our Supreme Court specifically said, just because you can legally possess some amount of cannabis under certain specified conditions, does not mean that all forms of possession are presumed to be legal, regardless of the changes in Illinois law. There are still illegal ways to transport it, illegal places to consume it, illegal amounts to possess it. So we have to remember in Illinois, you have to be 21 to possess cannabis, even in these legalized amounts. And here, Officer Taylor knew from pulling defendant's information that he was 19 years old. He also knew from the police records that he was involved with the street gang, the Insane Deuces. He testified that it's common knowledge that gang members are involved with drug, narcotics transactions at times. But most importantly, the people are just pointing this out to show all the information the officers had at the time. Nevertheless, even if they didn't have this, they had a proper violation of the Illinois Vehicle Code, so they could do a canine sniff on the defendant's vehicle. And they did, and it alerted, and it found the shape, and it also found the loaded, uncased gun underneath the defendant's seat, with the handle facing forward so the person driving the car could easily access it. In his brief, defendant complains and brings up again today about Redmond. But your honors, Redmond couldn't be more clear that he dealt with burnt cannabis. It was paragraph one of Redmond where it looked at, you know, so the issue is after cannabis has been legalized, whether the odor of burnt cannabis provides PC to search. No one talked about burnt cannabis here. There was no evidence of burnt cannabis. So Redmond really has nothing to do with this case, your honors. And I understand that my motion to decide additional authority on people versus hostings that came out with the 4th District on June 26 has not been ruled upon by this court. But because defense counsel did bring it up, I would like to address it. If you'd like me to stop addressing it, please let me know, and I'd be happy to do so. But with regard to defense counsel's argument that the concurrence said that a dog sniff, I'm sorry, that a sniff after the legalization of cannabis could only be good by a human. I just want to point out paragraph 91. The concurrence talks about this being a new issue. And then he says, that is, however, exactly the reason I conclude that it should not be addressed in this case. The issue was not raised below, and it only comes to us via defendant's argument that his attorney rendered ineffective assistance by failing to raise the issue. So that really has nothing to do with anything. Hoskins simply reaffirmed the law that's out there by our Illinois Supreme Court that the dog sniff was good. And even after cannabis had been legalized, there's still many, many ways that it is illegal. And a trained canine officer for cannabis, heroin, methamphetamine has still been upheld. And therefore, the trial court properly granted the motion to suppress your honor. With regard to defendant's next argument that he was not proven guilty beyond a reasonable doubt of knowingly possessing the firearm. As the people put in their brief, we know that knowledge is more often than not proven by circumstantial evidence and not direct evidence. Not many defendants are we going to get saying, yeah, I knew that there was a gun underneath my seat with the handle facing outward. As this court held in 2019 and People v. Castino, circumstantial evidence is proof of facts and circumstances from which a trial court may infer other connected facts, which reasonably and usually follow. So what did the state have to prove here? They had to prove that defendant had knowledge of the presence of the weapon and that he exercised immediate and exclusive control over the area where it was found. Your honors, the state absolutely proved both those elements beyond a reasonable doubt. The issue of whether the defendant had, I'm sorry, the defendant's girlfriend had joint possession of it is a red herring. In People v. Winder, 1st District, 2024, the 1st District Court held that joint possession is really irrelevant. Here, what evidence was admitted at trial that the defendant knowingly possessed this gun? Okay, Officer Taylor testified the vehicle plates came back to defendant that he owned that car. The defendant himself admitted that he owned the car. Defendant was alone in the vehicle when it was stopped. The firearm was found directly underneath the driver's seat, uncased, unloaded with the handle facing forward. And a huge point, defendant's DNA was found on the firearm handle. Forensic scientist Aper testified that it was 2.7 quintillion times more likely that the DNA on that gun was from defendant and two unknown individuals than rather than three unknown individuals. Defense counsel just mentioned the fact that there was no testing done on the girlfriend or any other individuals. I fail to see how that's relevant here at all, Your Honor, since joint possession is okay. We've got 29% of his DNA from Blake Aper testifying that it's on the handle of the gun. We know that he was ineligible to possess a firearm based on his age, his juvenile adjudication, the fact that he didn't have a Ford part or a concealed carry part. Huge point also, Your Honor, is a trial court found as a prior fact that defendant's girlfriend's testimony was incredible. And I'd like to say even Your Honor's reading the testimony in black and white, you can tell she's incredible. First, she says she put the gun and the ammo in the car, but she can be nearly didn't remember where she put the ammo. She said defendant never touched the gun, which was belied by the DNA evidence. She said she bought a gun to protect herself and her child, but then admitted that after the gun was confiscated when defendant was arrested, she never went and purchased another gun. She said that she showed up at the scene of the crime on the evening, but never told the police that she owned the gun. And through the whole pendency of these proceedings, never called the police or the state's attorney's office and said, there's been a terrible mistake. It's my gun, not defendant's gun. So all those reasons, Your Honor, show that he was, we met those elements. He was in exclusive control of the area around where the gun was found, and that he, the circumstantial evidence certainly proves that he had knowledge of the presence of that weapon. Defendant, in trying to argue that the state did not prove this case beyond a reasonable doubt, cites through several cases that are completely inopposite to the instant case. First, he cites to People v. Bailey, which was a case out of this court in 2002. The defendant in that case was sitting in the front passenger seat, and after the people had been cleared from the vehicle, during an inventory search, a firearm was found underneath the seat that that defendant was seated in. However, defendant said he didn't know there was a gun in the vehicle. Importantly, the court found there was no affirmative evidence, either circumstantial or direct, to establish that he had knowledge that there was a gun under the seat. There were no fingerprints, the gun was owned by a woman who did not report it stolen, the vehicle was owned by another woman who did not report it stolen, and they had no evidence of any connection between either one of these women and the defendant in that case. Here, as I just stated, we've got a plethora of evidence, of circumstantial evidence, showing that we knew that, I'm sorry, the defendant knew that he possessed that gun, and it was underneath his driver's seat. And importantly, there was a very direct connection between himself and his girlfriend, they had a romantic relationship, and they also shared a child together. So Bailey is absolutely no hope whatsoever to the defendant's case. Counsel makes a couple other arguments that alleged anomalies in the DNA, as the people pointed out in the brief, that's absolutely false. Forensic scientist Blake Aper said that any change in the stochastic threshold had absolutely nothing to do with his bearing on the analysis of the DNA interpretation. And in fact, the DNA leader at the Illinois State Police, Richiel, testified, she reviewed it and said the sample was good. He also talks about there was a possibility that his DNA could have gotten on the gun handle from shaking his girlfriend's hand in the transferring. Your honors, that was also for the trial, or trial fact to look into and decide whether that had any credence to it. And it was specifically shot down by forensic scientist Aper, said it's a possibility, but it doesn't correlate in any way whatsoever to the 29% DNA found on the handle. That 29% has absolutely nothing to do with the activity level. Defendant also cites two people, a carpenter, a first district 2024 case, which also does not help him at all. There was no evidence to infer that the defendant knew the gun. Oh, they tore apart the seat of the car. First of all, the stop was bad. It was a busted taillight and something hanging from the rear view mirror. At the hearing, the officer testified, yeah, I know that that headlight is not a good traffic stop. And the body cam showed they never talked about anything hanging from the headlight. They tore the car apart. They found a gun embedded in the car. The appellate court said, first of all, there's no way he could ever be in close proximity to reach it. And that was even 13 minutes within this. It took them 13 minutes to tear apart the seat and find it. So that the car was not even registered with the defendant, which is different from here. Again, carpenter has nothing to do with the facts in this case and does not help defendant whatsoever. And I believe that's all I have, Your Honor. If there are any questions. Justice McLaren, do you have any questions? Not really. We did have a motion to cite additional authority. Right. I was about to mention that it's already been discussed. And so that motion is granted. Thank you, Your Honors. And Justice Jorgensen, did you have any questions? I did. Does it matter that,  the officers did not detect any odor of anything? I mean, is it relevant? And if so, to what?  I was just going to ask you, Your Honor, is it relevant to what? If the, if the officer said that they smelled burnt cannabis, that we know under Redmond would not be, would not be enough alone, that they could have had more than that. They could have had burnt cannabis and something else. The fact of the matter is here, they didn't smell it, which the case law is quite clear that we don't need that. After a normal traffic stop, which we have and defendant doesn't contest, you can do a free air snip. And that's exactly what happens here. Okay. All right. Thank you, counsel. Mr. Dixon, you may begin your rebuttal when ready. Thank you very much. And we do. And again, we have cited to the Hoskins case. And going again to the concurrence, the concurrence stated, we do not know whether the cannabis here was found in a container or whether that container was as far as humans are concerned, concerned odor proof. And that's obviously what we have here. I think to allow a canine to smell cannabis through an odor proof container. Now counsel says that there was a shake in these, these containers. And one was like, I think they didn't subscribe as a film canister. And another was a bag that had a seal on it. Nothing was tested. It appeared to be cannabis. And it appeared that it had transport. There was nothing tested. There was no lab report indicating that there was actually cannabis in there, but it appeared that it had transported cannabis. And again, it was shake. It wasn't something that was even quantified in grams, let alone anything else. So it doesn't matter how much, I mean, Rex is not trained to alert on amount, just presence.  It was not a Daisy. It was not a Daisy flower or a peony, right? It's no, it was, it was marijuana and a seal proof container, an odor proof container because the officers didn't smell it. Counsel suggested that the seal was not intact. Okay. But the officers didn't smell it and it was shake. Was there cannabis in there? They're talking about shake. There's nothing, there's nothing weighing it. So is it now going to be a, an issue for all patrolmen to be a bonafide police officer? You must have a certain level of ability to detect odors. What if we send a police officer out with a horrible cold that day? Can't smell anything. And he relies on the dog. So all, all of any search he or she might take based on the alert of a dog would be inherently suspect because the officer didn't smell anything. Only if they're trained on marijuana. And there's an officer in Elburn who lost a sense of smell in an accident and could not testify that even in DUI cases. And that was something that he came, but the case law says that even when an officer detects the odor of cannabis, they have to have some type of training. They have to show their own training for that odor of cannabis. And, and again, if we are allowing these dogs to smell, it completely obliterates the rule as it's, or the legislation as it's written in this case. I mean, we could also make, or train dogs to smell Xanax because we're not allowed to have Xanax unless you have a prescription. And again, I think this may be going back and I don't know if I fully agree with Justice McClaren. Okay. Well, there's a lot of people who can't have it. Let's just go ahead and search. I don't know that we give up our, our property. My bad. I didn't mean to cut you off. That was inappropriate. I apologize. But here, here's my next question. Your client's under the age of 21. He can't have cannabis no matter what. Right. And there was no proof that there was any cannabis, except that there was cannabis that had been carried in that car. But my point is the dog, the officer knows this defendant is under the age of 21. The dog alerts even to raw cannabis. Let's assume that's what he was alerting to. Okay. This defendant can't possess that no matter what. Right. And we do know there's little traces left. There's something, there's, there's something, something, something left. And I don't know that that was flushed out. I know a council called it shake again. There was nothing that was weighed. And again, that would be an argument that we'd have at court. If he was charged with marijuana, but he wasn't. Right. And so it's the basis for the stop, the basis for the search search. My bad, my bad. The basis for the search. I agree with that. Your honor. I would agree with your honor. I would concede that to your honor. They don't have that. But again, that wasn't the charge. They didn't have that. They had him pulled out of the car. And they searched that car. They did not arrest him for that. And I think that belies that argument. Right. But, but if you don't charge somebody with the basis of the, what the probable cause to get you to search the car, does that really doesn't negate the search for evidence? It's consideration. I'm sorry. I'm sorry. Go ahead. For a person under 21. Yes. I would concede that your honor. That that could be. And again, yes. I mean, he can't even have it when he went in a sealed proof container and there's no proof of any medical. And I don't know that he can get that even under 21. Great. Okay. Thanks. I have no other question. Thank you. Sorry, Justice McLaren. Do you have any questions? No, not really. All right. Then that will conclude the argument. Thank you both counsel for your presentations. We will take the matter under advisement and issue a disposition in due course. Thank you, your honors. Have a happy fourth. Thank you for your arguments this morning. Thank you.